658 So.2d 130 (1995)
James KINTZELE, Appellant/Cross-Appellee,
v.
J.B. & SONS, INC., and James Buening, Appellees/Cross-Appellants.
No. 94-906.
District Court of Appeal of Florida, First District.
July 11, 1995.
Rehearing Denied August 25, 1995.
*131 Louis D. D'Agostino of Quarles & Brady, Naples, for appellant/cross-appellee.
Leonard Alterman, Jacksonville, for appellees/cross-appellants.
BENTON, Judge.
Appellees brought suit to vacate an arbitration award made by the Paul W. Davis Systems Arbitration Committee and affirmed by an arbitration appeal board. James Kintzele counterclaimed, seeking confirmation of the award. Both sides filed motions for summary judgment. The trial court confirmed the arbitration award "except with regard to the award of punitive damages," which it vacated. On appeal, James Kintzele argues that the arbitration award should have been confirmed in its entirety. James Buening contends on cross appeal that he should not be held liable personally. We conclude the arbitration award should have been confirmed in all respects.
Mr. Kintzele agreed to purchase certain franchise rights from J.B. & Sons, Inc. and Mr. Buening, in accordance with a franchise purchase and sale agreement all parties signed. At closing, Mr. Kintzele paid $50,000 and gave a promissory note for $100,000. Among the documents executed at closing was a "TRIPARTY AGREEMENT FOR THE TRANSFER OF A PAUL DAVIS SYSTEMS FRANCHISE," which Mr. Buening signed personally. By reference to another document, the agreement bound the parties, as follows:
Any and all disputes or claims between two or more Persons involving the application, interpretation, or meaning of or the rights, duties, obligations or privileges of any Person *132 under any receipt, franchise agreement, operations manual, contract, agreement, certificate, bond or other instrument growing out of the operation of the PDS Franchise System or entered into between any two or more Persons, whether involving a claim or dispute in tort, in contract or otherwise, including, without limitation, any claim or dispute arising out of the operation of a Franchise shall be settled by arbitration in accordance with the provisions of Articles XIII (Arbitration-General) and XIV (Organization of Arbitration Committees) hereof.
Paul W. Davis Systems, Inc. conferred the original franchise on J.B. & Sons, Inc. and James Buening, authorizing them to do business in southwest Florida. When the present dispute arose, Paul W. Davis Systems, Inc. made arbitrators available and provided for an appeal to its national executive committee arbitration appeal board, in accordance with procedures specified in documents signed by Mr. Buening or incorporated by reference in documents he signed.

"In Personam" Jurisdiction
We first address the issue raised on cross appeal. The parties themselves confer jurisdiction in arbitration proceedings by the agreements they make. Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327 (Fla. 1989); City of West Palm Beach v. Palm Beach County Police Benevolent Ass'n, 387 So.2d 533, 534 (Fla. 4th DCA 1980). On questions of arbitrators' "in personam" jurisdiction, the parties are entitled to judicial interpretation of the pertinent contractual language. Here the trial court made the requisite de novo determination, in deciding that appellee James Buening was a party individually to the agreement that subjected the signatories' disputes to arbitration. See First Options of Chicago, Inc. v. Kaplan, ___ U.S. ___, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The trial court held Mr. Buening personally responsible because Mr. Buening personally agreed to arbitrate disputes of the kind that led to the arbitration award.
The trial court also took note of Mr. Buening's participation in the arbitration appeal. While both Mr. Buening and J.B. & Sons, Inc. refused to participate in the original arbitration hearing, both appeared in the arbitration appeal proceeding after "the Circuit Court of Broward County's dismissal of Buening's and J.B.'s civil action and remand to Paul Davis Systems arbitration." Cross-Appellants' Exhibit A-7. "[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue," First Options of Chicago, at ___, 115 S.Ct. at 1925, but nothing in the record suggests that Mr. Buening's participation before the appellate arbitrators was so limited. The ruling of the arbitration appeal board addressed various procedural questions and the punitive damages issue as well as finding jurisdiction over Mr. Buening.

Procedural Informality Permissible
On appeal here, Mr. Kintzele contends that the trial court should not have overturned the arbitrators' award of "punitive damages." The trial court ruled as it did on this question "because no claim for punitive damages was made in the Arbitration Complaint." This omission made the award of "punitive damages" a violation of "fundamental due process," in the trial court's view, and deprived the arbitrators of jurisdiction to make an award of damages denominated punitive. On this basis, the trial court concluded that the arbitrators had "exceeded their powers." § 682.13(1)(c), Fla. Stat. (1993). But the amount of the award was much less than the amount Mr. Kintzele sought, and the Florida Arbitration Code specifies no pleading requirements for initiating arbitration.
Deciding that punitive damages awarded in arbitration are not subject to section 768.73, Florida Statutes (1993), our supreme court recently reiterated its teaching that arbitration awards are entitled to judicial deference:
Under Florida law, arbitration is a favored means of dispute resolution and courts indulge every reasonable presumption to uphold proceedings resulting in an award. Roe v. Amica Mut. Ins. Co., 533 So.2d 279, 281 (Fla. 1988). This high degree of conclusiveness attaches to an arbitration award because the parties themselves *133 have chosen to go this route in order to avoid the expense and delay of litigation. Applewhite v. Sheen Fin. Resources, Inc., 608 So.2d 80, 83 (Fla. 4th DCA 1992). Arbitration is an alternative to the court system and limited review is necessary to prevent arbitration from becoming merely an added preliminary step to judicial resolution rather than a true alternative. Complete Interiors, Inc. v. Behan, 558 So.2d 48, 50 (Fla. 5th DCA), review denied, 570 So.2d 1303 (Fla. 1990). In light of arbitration's status as an "alternative to the court system," id. at 50, we cannot assume that the same legislative objectives underlying section 768.73 are applicable to arbitration proceedings. If the legislature determines that arbitration proceedings should be subjected to the same punitive damage limitations as court actions, then it can so indicate.
Miele v. Prudential-Bache Sec., Inc., 656 So.2d 470 (Fla. 1995). If section 768.73, Florida Statutes (1993) does not apply to arbitration awards of punitive damages, judicially created pleading requirements on the subject must likewise be inapposite. Cf. Hialeah Park, Inc. v. Ocala Breeders' Sales Co., 528 So.2d 1227 (Fla. 3d DCA 1988) ("we are unaware of any legal requirement that an arbitration award must coincide with a party's request for damages").
Appellant's request for arbitration gave fair notice of the dispute to be arbitrated. Mr. Kintzele alleged that the business he acquired from Mr. Buening and J.B. & Sons, Inc. was encumbered with an undisclosed lien (to secure indebtedness to third parties of some $60,000) and that Mr. Buening had made other misrepresentations in connection with the sale overstating the value of the business:
I am making a formal request for arbitration to resolve or rescind my contract with Jim Buening.
....
1. All the sales figures were erroneous and were apparently exaggerated and/or invented in order to make the business appear more profitable than it was in reality.
2. That the operation was represented as "up and going" was an absolute, unequivocal, unadulterated lie.
3. The sales contract which indicated there was a Paul Davis Of Naples was a total misrepresentation. There was no real Paul Davis of Naples.
....
10. Had the territory been marketed as a new operation it should have sold for somewhere around $25-30,000.
11. In the purchase and sale agreement it states that the seller has the rights to the franchise territory. In this right was a note from the previous owner Mr. R. Adams. Buening represented in item D of the warrantee that he had clear, good absolute title to the territory he was selling. This is a clear misrepresentation and in itself is a breach of the contract.
I am requesting the Arbitration committee to consider two points as I feel these are the only legal remedies that can be considered and the only remedies that I will accept:
1. Since there were numerous misrepresentations, rescind the contract and refund the moneys I paid Buening as well as the money I invested in the operation. This amounts to about $140,000.
2. If Buening cannot or will not agree to reimburse us our damages, then forgive the note to J B & Sons.
I want the committee to meet as quickly as possible because I am asking the committee to consider this a "breach of contract" suit, and accordingly I might have to surrender the franchise.
While pleaded as a breach of contract, the misrepresentations alleged might also be viewed as tortious. See Rappaport v. Jimmy Bryan Toyota of Fort Lauderdale, Inc., 522 So.2d 1005 (Fla. 4th DCA 1988); Tinker v. De Maria Porsche Audi, Inc., 459 So.2d 487, 493 (Fla. 3d DCA 1984), review denied sub nom., De Maria Porsche Audi, Inc. v. Tinker, 471 So.2d 43 (Fla. 1985). "Arbitrators are not constrained by formal rules of ... procedure." Tallahassee Memorial Regional *134 Medical Ctr., Inc. v. Kinsey, 655 So.2d 1191 (Fla. 1st DCA 1995).

Remedies
To remedy the injury done Mr. Kintzele by failing to disclose the encumbrance, the arbitrators ordered Mr. Buening to convey clear title. To remedy the other actions complained of, the arbitrators awarded "the sum of $40,000.00 as punitive damages." They made no award of compensatory damages to Mr. Kintzele. "It should be remembered that arbitrators are generally businessmen chosen for their expertise in the particular subject matter of the suit," Tassinari v. Loyer, 189 So.2d 651 (Fla. 2d DCA 1966), who need not be lawyers. Perhaps the arbitrators did not use "punitive" in pure technical contradistinction to "compensatory."
The trial court did not suggest that the arbitrators would have lacked authority to award punitive damages against J.B. & Sons, Inc., if a claim for such relief had been properly pleaded. But appellees argue that awards of punitive damages were beyond the arbitrators' competence in any event, relying particularly on Complete Interiors, Inc. v. Behan, 558 So.2d 48, 51 (Fla. 5th DCA 1990) (contract arbitration clause covering "disputes ... arising under this contract" did not contemplate punitive damages award). The arbitrators obviously concluded the language describing the scope of their responsibility was broad enough to authorize the relief they gave. See Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Melamed, 453 So.2d 858, 861 (Fla. 4th DCA 1984). We believe judicial deference to their decision is in order.
The ultimate source of the arbitrators' authority is the parties' agreement. Schnurmacher Holding. Arbitrators have the responsibility in the first instance, however, to decide not only the scope of their "subject matter" jurisdiction, see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985), but also the range of available remedies. See generally Advanced Micro Devices, Inc. v. Intel Corp., 9 Cal.4th 362, 36 Cal. Rptr.2d 581, 885 P.2d 994 (1994). If anything, arbitrators enjoy broader discretion in fashioning remedies than courts do. Prudential-Bache Sec., Inc. v. Shuman, 483 So.2d 888, 889 (Fla. 3rd DCA 1986). We do not believe it is for a court asked to confirm or vacate an arbitration award, construing language as expansive as the pertinent language here, to decide that the arbitrators lacked the legal ability to award monetary damages. See Mastrobuono v. Shearson Lehman Hutton, Inc., ___ U.S. ___, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).
"[I]ndependent judicial reevaluation of remedies would tend to defeat the contractual intent to resolve disputes intentionally and by private mechanisms." Advanced Micro Devices, 36 Cal. Rptr.2d at 591, 885 P.2d at 1004. Overturning the award of "punitive damages" to appellant precludes the possibility of monetary damages of any kind, now that arbitration has concluded and the statute of limitations has run. "Postarbitration litigation does not contemplate further arbitration; it is merely concerned with the fate of the previous proceeding." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 329 (7th Cir.1995).
Insofar as the trial court's judgment vacates the arbitration award, it is reversed. Insofar as the trial court's judgment confirms the arbitration award, it is affirmed.
MINER and WEBSTER, JJ., concur.